## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS,
## DALLAS DIVISION



TERESA WILLINS and
JOI BROADNAX, on behalf of
themselves and others similarly
situated,

     Plaintiffs,

v.

CSA - CREDIT SOLUTIONS
OF AMERICA, INC.,

     Defendant.

§
§
§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO.

_____

COLLECTIVE ACTION

## COMPLAINT

Plaintiffs, TERESA WILLINS and JOI BROADNAX, by and through their counsel, for their Complaint against Defendant, CSA – CREDIT SOLUTIONS OF AMERICA, INC., (collectively "CSA" or "Defendant"), seek to recover for Defendant's violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 *et seq*., and hereby states and alleges as follows:

## INTRODUCTION

1.    This is a collective action brought pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201- 219 (hereinafter "FLSA") to

recover unpaid overtime compensation owed to Plaintiff Teresa Willins and Plaintiff Joi Broadnax (hereinafter "Plaintiffs") and all others similarly situated who were formerly or are currently employed as debt consultants by Defendant CSA.

2.    CSA employs these employees in Dallas County, Texas.

3.    Throughout the liability period, CSA has maintained offices in Dallas Texas.

4.    CSA is a for-profit financial service company primarily marketing and providing debt settlement plans to the public.

5.    For at least three years prior to filing of this complaint and continuing (hereinafter "Liability Period"), CSA had a policy and practice of not correctly compensating its debt consultants for work performed for the benefit of CSA over and above forty (40) hours per week, to wit:  virtually all debt consultants received a $2,000 forgivable draw their first 90 days of employment and a non-forgivable draw of $2,000 per month thereafter. Debt consultants qualified debtors for debt settlement plans of Defendant by verifying the debtor possessed at least $10,000 in debt.   Next debt consultants analyzed each creditor comprising the $10,000 is owed at least $600 and there are contracts in place between the creditor and CSA.  The

2

debt consultant sets up a CSA account for each creditor. Lastly, the debt consultant verified the debtor's bank accounts and assisted the debtor in picking a payment plan. Once a plan was chosen the debt consultant, using CSA guidelines, would set up a monthly draft on the debtor's bank account whereby CSA would obtain its fee and moneys to satisfy the debtor's creditors. Eighty-five percent (85%) of CSA's fee is collected from debtors' accounts within the first 90 days. Debt consultants received a fee from the first monthly draft which was a percentage determined on the total volume of draft's occurring monthly attributable to that debt consultant.

6.      Debt consultants were required to work a minimum of 12 hours per day, but were expected to work as many hours as necessary to reach assigned sales goals. Debt consultants regularly worked 14 – 16 hours a day and CSA provided debt consultants a room to nap and sleep when necessary to reach company goals.

7.      Debt consultants were not provided a rest or lunch break, but instead, CSA served debt consultants "cup of noodles" for lunch so they would not have to leave their desk and could continuing selling the debt settlement services.

8.      Debt consultants worked six (6) days a week.

9.    As stated above, debt consultants do not receive overtime for hours worked over 40 in any week.

10.    Effective May of 2009, Defendant CSA revised its debt consultants' compensation plan to include an overtime component.

## JURISDICTION

11.    This Court has jurisdiction over this action pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331, 1337.

12.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) where defendants may be deemed to reside because CSA maintains offices in Dallas County within this District.

## PARTIES

### Plaintiff Teresa Willins

13.    Teresa Willins was, at all material times, a resident of Dallas County, Texas, and worked for Defendant at its local offices located therein.

14.    Plaintiff Willins was, at all material times, a covered, non-exempt employee of CSA within the meaning of the FLSA, 29 U.S.C. § 203(3) and (g).

15.    Plaintiff Willins is a debt consultant employed with CSA from

January 2009 to present.

16.    During the portions of the Liability Period, Plaintiff Willins regularly worked in excess of forty (40) hours per week without receiving the correct overtime compensation.

### Plaintiff Joi Broadnax

17.    Joi Broadnax was, at all material times, a resident of Dallas County, Texas, and worked for Defendant at its local offices located therein.

18.    Plaintiff Broadnax was, at all material times, a covered, non-exempt employee of CSA within the meaning of the FLSA, 29 U.S.C. § 203(3) and (g).

19.    Plaintiff Broadnax is a debt consultant employed with CSA from December 2008 to present.

20.    During the portions of the Liability Period, Plaintiff Willins regularly worked in excess of forty (40) hours per week, without receiving the correct overtime compensation.

### Defendant CSA

21.    CSA maintains an office within the jurisdiction of this Court.

22.    CSA is subject to the requirements of the FLSA.

23.    Defendant CSA is the employer of Plaintiff Willins, Plaintiff

Broadnax, and other similarly situated debt consultants within the meaning of the FLSA, 29 U.S.C. § 203(d).

24.    Defendant is not a retail or service store/establishment as defined under 29 C.F.R. 314-315.

25.    Plaintiff does not sell goods or services as defined under 29 C.F.R. 779.314.

26.    At all times material hereto, Defendant was an "enterprise engaged in commerce" within the meaning of 29 U.S.C. § 203 with annual gross sales in excess of $500,000 within the meaning of the FLSA.

## GENERAL FACTUAL ALLEGATIONS

27.    Plaintiffs reassert paragraphs 1 thru 26 as if fully stated herein.

28.    CSA does not compensate its debt consultants overtime for hours worked over forty.

29.    CSA's revised compensation/bonus plan containing an overtime component does not correctly calculate debt consultants' regular rate of pay for purposes of calculating overtime; i.e. commissions paid on top of consultants' hourly rate are not included in their regular rate of pay.

## COUNT I
### Violation of 29 U.S.C. § 207

30.    As a result of the allegations contained in paragraphs 1 thr 29, CSA willfully violated the provisions of the FLSA which requires overtime compensation be paid to non-exempt employees for hours worked over 40 in any workweek.  29 U.S.C. § 207.

31.    Plaintiffs and all persons similarly situated have been deprived overtime compensation in amounts to be determined at trial and they are entitled to a recovery of such amounts in addition to liquidated damages and attorney fees and case expenses.  29 U.S.C. 216(b).

## COLLECTIVE ACTION ALLEGATIONS

32.    Plaintiffs bring the FLSA claim, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b).  In addition to the claims of the individually named Plaintiffs, Plaintiffs brings this action as representatives of all similarly situated former and current employees of the Defendant.   The potential class of "opt-in" employees can be defined as:

> *All current and former Debt Consultants paid under a compensation system where they were not compensated for all hours worked and related overtime at the rate of time and one- half for all hours worked over forty (40).*

33.    FLSA claims may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

34.    Plaintiffs, individually and on behalf of other similarly situated employees, seek relief on a collective basis challenging, among other FLSA violations, Defendant's practice of failing to accurately record all hours worked, practice of miscalculating the overtime rates in weeks where bonuses were paid, and failing to pay employees overtime compensation.

35.    The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from the records of Defendant, and potential class members may easily and quickly be notified of the pendency of this action.

36.    Potential collective action members may be informed of the pendency of this class action through direct mail and office posting. Plaintiffs believe 900 plus current and former debt consultants may have been affected.

37.    There are questions of fact and law common to the class that predominates over any questions affecting only individual members. The questions of law and fact common to the class arising from Defendant's actions include, without limitation, the following:

a.  Whether Plaintiffs were compensated for all hours worked;

b.  Whether Plaintiffs worked more than forty hours per week;

c.  Whether Plaintiffs were compensated time and one half their "regular rate" for all hours worked over forty in any and all weeks;

d.  Whether Defendant's practices accurately account for the time Plaintiffs actually are working;

e.  Whether Defendants' compensation policy and practice is illegal; and,

f.  Whether Defendant had a policy and practice of willfully failing to record and compensate employees for overtime; and

38.    The questions set forth above predominate over any questions affecting only individual persons, and a collective action is superior with respect to considerations of consistency, economy, efficiency, fairness and equity, to other available methods for the fair and efficient adjudication of the federal law claims.

39.    The Collective Action Representatives' claims are typical of those of the similarly situated employees in that these employees have been employed in the same or similar positions as the Collective Action Representatives and were subject to the same or similar unlawful practices as the Collective Action Representatives.

40.    A collective action is the appropriate method for the fair and efficient adjudication of this controversy.  Defendant has acted or refused to act on grounds generally applicable to the similarly situated current and former employees.  The presentation of separate actions by individual similarly situated current or former employees could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Collective Action members to protect their interests.

41.    The    Collective    Action    Representatives    are    adequate representatives of similarly situated current and former employees because they are employees of the same entity and their interests do not conflict with the interests of the other similarly situated current and former employees they seek to represent.  The interests of the members of the class of employees will be fairly and adequately protected by the Collective Action Representatives and their undersigned counsel, who have extensive experience prosecuting complex collective action lawsuits.  Furthermore, employees are interchangeable as production needs dictate and as a result they are all similar regardless of title or supervisor.

42.    Maintenance of this action as a collective action is a fair and efficient method for the adjudication of this controversy.    It would be impracticable and undesirable for each member of the collective action who suffered harm to bring a separate action.    In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single collective action can determine, with judicial economy, the rights of all collective action members.

WHEREFORE, it is respectfully prayed that this Court grant to the Plaintiffs the following relief:

a.    At the earliest possible time, issue an Order allowing Notice or issue such Court supervised Notice to all similarly situated current and former Honda employees, as described above, of this action and their rights to participate in this action.    Such Notice shall inform all similarly situated current and qualified former employees of the pendency of this action, the nature of this action, and of their right to "opt in" to this action if they did not receive proper overtime for hours worked in excess of 40 in a week.

b.    Issue an Order directing and requiring Defendant to pay Plaintiffs and all other similarly situated employees damages in the form of

11

reimbursement for unpaid premium overtime wages (past and future) for all time spent in excess of 40 hours per week performing compensable work for which they were not paid pursuant to the rate provided by the FLSA;

      c.    Issue an Order directing and requiring Defendant to pay Plaintiffs and all other similarly situated employees liquidated damages pursuant to the FLSA in an amount equal to, and in addition to the amount of overtime wages owed to them;

      d.    Issue and Order directing Defendant to reimburse Plaintiffs and other similarly situated employees for the costs and attorneys fees expended in the course of litigating this action, pre-judgment and post-judgment interest;

      e.    Provide Plaintiffs with such other and further relief, as the Court deems just and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby request trial by jury of all issues triable by jury under Texas and Federal law.

12

Dated: <u>6/3/09</u>                                    Respectfully submitted,

                                               **THE COCHRAN FIRM –
DALLAS, PLLC**


<u>/s/ Bryan Pope</u>
**BRYAN POPE, SBN: 00788213**
3811 Turtle Creek Blvd
Turtle Creek Centre, Suite 1400
Dallas, TX 75219
(214) 651-4260 – Phone
(214) 651-4261 – Facsimile
<u>bpope@cochranfirm.com</u>


      – and–

*Seeking admission pro hac vice:*

Robert J. Camp, **ASB: 1864076C**
**THE COCHRAN FIRM, P.C.**
505 20th Street North, Suite 825
Birmingham, AL 35203
(205) 244-1115 – Phone
(205) 244-1171 – Facsimile
<u>rcamp@cochranfirm.com</u>