IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TERESA WILLINS and JOI BROADNAX, On Behalf of Themselves and All Others Similarly Situated,§§§§<br><br>Plaintiffs §<br>§<br>v. §<br>§<br>CREDIT SOLUTIONS OF AMERICA, §<br>INC. and DOUG VAN ARSDALE §<br>§<br>Defendants § | CIVIL ACTION NO. 3:09-cv-1025-M |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTIONS TO STRIKE DEFENDANT'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES**

The Court should strike CSA's alleged counterclaims and insufficiently pled affirmative defenses. CSA's Response fails to address the authorities cited by Plaintiffs, misleads the Court by arguing leading authorities have been modified or abrogated when they have not, and does not address the factual deficiencies outlined in Plaintiffs' Motions. Consequently, Plaintiffs' Motions should be granted.

**I.   Defendant Misleads the Court About *Brennan's* Application to the Present Case.**

For over three decades, the Fifth Circuit has held that counterclaims in FLSA actions are inappropriate and should be stricken. *See Brennan v. Heard*, 491 F.2d 1 (5th Cir. 1974). Asserting counterclaims like those alleged by Defendant is an attempt to delay the litigation and subvert the goals of the FLSA. *Donovan v. Pointon*, 717 F.2d 1320 (10th Cir. 1983). Based on *Brennan*, this Court has struck counterclaims in FLSA actions and should do so in the instant case.

CSA argues that, under Texas law, employers may assert claims against employees to recover advances on commissions. In asserting counterclaims to recover commissions paid out, Defendant ignores Fifth Circuit and this Court's precedent that such counterclaims are inappropriate in FLSA lawsuits. *Brennan*, 491 F.2d 1; *Lewis v. Powr Guardian Inc.*, CA No. 3:04-CV-1743-M (N.D. Tex. Dec. 27, 2004; Dkt. No. 17). CSA's only argument concerning *Brennan* is CSA's erroneous assertion that the Fifth Circuit abrogated its holding in *Brennan* with its decision in *Singer v. City of Waco*, 324 F.3d 813 (5th Cir. 2003). Defendant's assertion is inaccurate at best and misleading at worst.

A.  *Singer* **Did Not Modify or Abrogate** *Brennan.*

Defendant claims the *Singer* court modified or abrogated the holding in *Brennan*. (Response, pp. 4-5). *Singer* expressly did not modify or abrogate *Brennan*. *See Singer*, 324 F.3d at 828 n.9. Rather, in a footnote, the *Singer* court made a point to show how its holding in that case was not contrary to *Brennan*. *Id*. In footnote 9, the *Singer* court notes that there was no contention that the offsets allowed in *Singer* would violate the FLSA by causing the final awards to drop below the statutory minimum wage. *Singer*, 324 F.3d at 828 n.9. This is a statement of a factual deficiency which would not implicate the holding in *Brennan*. The clear message from this intentional reconciliation of the two cases is that *Brennan* is still good law and was not being overturned or modified. The *Singer* court's finding that its decision is consistent with *Brennan* is a far cry from modifying *Brennan's* holding as Defendant misstates. Nothing in *Singer* hints at needing to modify or abrogate a long-standing Fifth Circuit decision. If the *Singer* court intended to modify or overturn a prior panel decision, it would have done so expressly. Because *Brennan* is still good law and still prohibits offsets like the ones being sought in this case, the Court should strike Defendant's counterclaims.

### B. The *Brennan* Principles Are Still Applicable to Defendant's Commission-Based Counterclaims.

Defendant next suggests that because there has been no argument that CSA's alleged counterclaims would reduce Plaintiffs' recovery below minimum wage, *Brennan* does not prohibit the counterclaims. (Response, p. 5). It is critical to note that *Brennan's* holding was <u>not</u> limited to minimum wage concerns. The *Brennan* court identified both the "minimum wage <u>and</u> overtime" standards as sacrosanct: "Set-offs against back pay awards deprive the employee of the 'cash in hand' contemplated by the Act, and are therefore inappropriate in any proceeding brought to enforce the FLSA minimum wage <u>and</u> overtime provisions. . . ." *Brennan*, 491 F. 2d at 4 (emphasis added). *Brennan* further states, "The only economic feud contemplated by the FLSA involves the employer's obedience to minimum wage <u>and</u> overtime standards." *Id*. (emphasis added). In contrast to CSA's contentions, *Brennan* still stands for the proposition that an offset cannot violate the "cash in hand" concept of the FLSA by allowing an employer to apply an offset that would permit an employee from receiving less money than he/she is entitled to under the FLSA, whether that entitlement is based on the FLSA's minimum wage protections or its overtime protections.

In the case at bar, any offset against a final award for Plaintiffs would violate the "cash in hand" concept and reduce Plaintiffs' recovery below what is legally required. For example, assume a successful plaintiff in this action is owed $1000 in unpaid overtime. The employer must deliver all $1000 to the employee to comply with the overtime provisions of the FLSA. Any offset at all, even a penny, would bring the employer's payment below the required minimum threshold for overtime wages. This is the reason an offset cannot be allowed and none

of the exceptions identified in *Brennan* are applicable here.[1]  Allowing an offset of allegedly overpaid commissions against overtime wages due violates the principles enunciated in *Brennan*. Consequently, the Court should strike CSA's counterclaims.

### C. The "Offset" in *Singer* was Allowed Only Under Specific Circumstances Applicable to Public Workers Under a Section 207(k) Plan.

*Singer's* so-called "offset" must be viewed in light of the specific facts in that case.  In *Singer* a group of firefighters filed suit against the City of Waco to recover unpaid overtime. *Singer v. City of Waco*, 324 F.3d 813 (5th Cir. 2003).  The firefighters were working under a specific kind of pay plan permitted under Section 207(k) of the FLSA.  29 U.S.C. § 207(k). Under the FLSA, certain partially exempt municipal employees' overtime will not start to accrue until after they have worked substantially more than 40 hours per week.  This is generally due to the fact that these employees' schedules are very long as a result of the nature of their jobs. Under a 207(k) plan, firefighters do not begin accruing overtime hours until they have worked 53 hours, 106 hours or 212 hours during the work period, depending on the length of the work period.  29 C.F.R. § 553.201(a).

The *Singer* plaintiffs worked a 14 day work period, as opposed to a traditional 7 day work period.  *Singer*, 324 F.3d at 819.  Pursuant to § 207(k), the plaintiffs did not begin to accrue overtime until they worked 106 hours in the work period.  In a six week time period, the firefighters worked two 120 hour work periods, and one 96 hour work period.  *Id.* at 817.  The court found the firefighters were slightly underpaid in the 120 hour periods (by $6.60) but were overpaid in the 96 hour work periods (by $126.00).  *Id.* at 826.

---

[1] The *Brennan* principles are further abridged if it turns out that an offset of allegedly overpaid commissions exceeds the amount of unpaid overtime wages altogether and Plaintiffs are deprived of 100% of the overtime wages they are due.

**Reply to Response to Motions to Strike Counterclaims and Affirmative Defenses**                                     4

The trial court determined the city was entitled to a credit towards unpaid overtime under a theory of unjust enrichment. *Id.* However, on review, the Fifth Circuit determined that recovery was <u>not</u> allowed under the theory of unjust enrichment, but rather allowed the offsets because, under the circumstances in that case, the city essentially <u>prepaid</u> its overtime obligation. *Id.* The Fifth Circuit pointed out that the hours worked were regularly scheduled, and that it seemed logical that an employer would prepay for regularly scheduled overtime work under the circumstances in *Singer*. *Id.* at 828. Thus, the *Singer* court permitted the city to offset a <u>prepayment of overtime wages</u> in one period against the overtime wages required in another period. *Id*. The "offset" is the functional equivalent of an accounting reconciliation for employees who regularly worked specific schedules and were paid under a 207(k) plan.

The factual settings for *Singer* and the case at bar are entirely different. *Singer* deals with a unique group of municipal employees who fall under a limited exemption under the FLSA. CSA does not operate under a 207(k) plan. Plaintiffs do not work schedules similar to those in *Singer* where the prepayment of overtime could occur. Not only did CSA fail to <u>prepay</u> overtime, but it failed to pay overtime altogether. Defendant filed its counterclaim to attempt to recover "chargebacks" for commissions on contracts which later canceled. The counterclaims are <u>not</u> a claim for routine overtime prepayments (as in *Singer*). Defendant is seeking an affirmative recovery of other alleged damages against overtime wages due to Plaintiffs - the type of claim which is clearly not allowed. The *Singer* holding is limited to its facts, and CSA's request to bring suit for an offset of alleged overpayments of commissions (as opposed to the prepayment of overtime wages) against its overtime liability should be rejected.

Defendant's Response also cites an unpublished opinion from the Western District of Louisiana, *Monroe Firefighters Association v. City of Monroe,* as support for its argument that

counterclaims are allowed under the law. 2009 WL 916272 (W.D. La. March 31, 2009). *City of Monroe* presents the same issue as *Singer*. The *Monroe* plaintiffs were a group of firefighters who were subject to a §207(k) plan. *Id.* They sued to recover unpaid overtime. *Id.* The district court allowed the city to take an offset against the overtime owed to plaintiffs. *Id.* However, *City of Monroe* misapplied the Fifth Circuit's ruling in *Singer* to the extent the Louisiana district court stated that *Singer* allowed for state law claims as setoffs against recovered overtime. *Id.* at *12. The *Singer* court was clear that it was <u>not</u> allowing the setoff based on the state law grounds that the trial court initially applied. *Singer,* 324 F.3d at 826. Because *Singer* and *City of Monroe* are both narrow holdings limited to a specific group of individuals in a unique factual setting, they are inapposite to the case at bar.[2] Nothing about *Singer* or *Monroe* prevents this Court from applying *Brennan* and striking CSA's counterclaim.

## II. Defendant's Counterclaims Fail to State A Claim for Relief and Should be Dismissed under 12(b)(6).

In the alternative, Plaintiffs moved to dismiss Defendant's counterclaims on the grounds that they failed to state a claim for relief pursuant to Federal Rule of Civil Procedure 12(b)(6). As Plaintiffs articulated in their original Motion and brief, Defendant must plead its counterclaims with the same level of specificity Plaintiffs must plead facts in their Original Complaint. Defendant's pleadings are merely conclusory statements, rather than factual allegations. Defendant argues that *Twombly* does not change the legal standard from notice pleading to a heightened pleading standard. (Response, pp. 7-8). While Defendant is correct that *Twombly* does not change the standard away from a notice pleading standard, it does make

---

[2] *Morrison v. Executive Airport Refinishing, Inc.*, 434 F. Supp. 2d 1314 (S.D. Fla. 2005), cited by CSA makes Plaintiffs' Motions stronger. As the *Morrison* court notes, and as *Brennan* recognized, the FLSA allows for some limited offsets. *Id.* at 1321-22. Because the defendant in *Morrison* failed to specify if the offsets sought were allowed under the FLSA, the court struck the request. Here, CSA's counterclaim/offset is not permitted by the FLSA and should also be struck.

clear that parties must plead plausible facts, rather than make conclusory statements. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, the pleader must show that the allegations "possess enough heft" to establish entitlement to relief. *Id.* at 557. Defendant's Response does little more than assert that it adequately pled its counterclaims, without ever articulating to the Court how it did so.

### A. Defendant's Breach of Contract Claim is Not Adequately Pled.

Defendant's breach of contract claim is inadequate. CSA wholly fails to plead plausible facts, but rather asserts bare legal conclusions, which are clearly not sufficient under *Twombly*. As Plaintiffs explained in their Motion, Defendant is attempting to recover chargebacks on advances of commissions from former employees. However, Defendant makes no allegation that former employees would be subject to the chargeback provision within the alleged contracts. Even if there was a valid employment contract (which Plaintiffs dispute there was), that contract only covers current employees (at best) and not former employees. Furthermore, Defendant's breach of contract claim is merely a recitation of the legal elements of a claim and not the factual allegations which are the basis of the claim. Accordingly, the Court should dismiss Defendant's breach of contract claim because it does not meet the *Twombly* standard.

### B. CSA's Claim for Unjust Enrichment is Insufficient.

A claim for unjust enrichment only exists in very narrow circumstances. *Heldenfels Bros Inc. v. City of Corpus Christi*, 832 S.W.2d 39 (Tex. 1992). "Unjust enrichment is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall." *Id.* at 42 (internal quotations omitted). The only factual allegation CSA makes is that Plaintiffs received certain advances on commissions. (Defendant's First Amended Answer at ¶ 141). Defendant then goes on to assert that the commissions were

not "earned". (*Id.*).  The assertion that the commissions were not earned is a conclusory statement, and not a factual allegation.  That level of vague pleading is not sufficient to warrant relief on a claim of unjust enrichment.

The primary element of an unjust enrichment claim is that there is no valid written contract. CSA makes no attempt to even allege that no contract exists.  While Defendant claims it is asserting the claim for unjust enrichment in the alternative to the breach of contract claim, it does not even assert the basic facts to sustain a claim.  The Court should strike Defendants' claim for unjust enrichment because it fails to meet the *Twombly* standard.

### C. The Court Should Dismiss Defendant's Claim for Setoff and Recoupment and Attorneys' Fees.

CSA's claims for setoff and recoupment and attorneys' fees are not pled specifically enough for the Court to grant relief on them.  There are no factual allegations found within Defendant's Answer which support an affirmative claim for setoff and recoupment, nor does CSA attempt to articulate those facts in its Response to Plaintiffs' Motion.  Defendant's assertion that *Singer* allows for setoff is specifically addressed above.  CSA has misread the Fifth Circuit's opinion in *Singer*, and accordingly, the Court should not permit Defendant's claim for setoff or recoupment.

The Court should dismiss the claim for attorneys' fees.  As explained above, CSA's claim for breach of contract was not adequately pled.  Defendant's Response makes clear that the basis of its claim for attorneys' fees is prevailing on breach of contract claim.  Because Defendant has not sufficiently pled an affirmative claim for relief on a breach of contract theory, the request for attorneys' fees cannot succeed and should be dismissed.

### III.  CSA's Affirmative Defenses Are Not Sufficiently Pled and Should Be Struck from its Answer.

Plaintiff also moved the Court to strike CSA's affirmative defenses.[3] When determining the sufficiency of affirmative defenses, courts will apply the same pleading requirements as applied to complaints. *Woodfield v. Bowman,* 193 F.3d 354, 362 (5th Cir. 1999). Plaintiffs have explained the standard at length above. Defendant's affirmative defenses are insufficient and the Court should strike them. CSA claims it has provided Plaintiffs with adequate notice of the basis of its affirmative defenses. CSA is incorrect. Defendant's affirmative defenses are mere legal assertions with no factual basis whatsoever. CSA must plead facts which make recovery on the affirmative defenses plausible. *Twombly*, 550 U.S. at 555. That has not been done.

CSA contends it has provided Plaintiffs with fair notice of the basis of its affirmative defenses, and that is sufficient for the Court to deny Plaintiffs' motion. (Response, p. 13). As support for its argument, Defendant argues that Plaintiffs clearly understand the affirmative defenses because Plaintiffs' brief included a discussion of the statutory and regulatory requirements of the exemption. (*Id.* at 13 – 14). CSA's argument misses the point of *Twombly*. There must be a factual basis for asserting legal claims. Plaintiffs' counsel is well-versed in the FLSA and is aware of the elements necessary to prove Defendant's asserted affirmative defenses. Nevertheless, Plaintiffs' counsel has no idea about and is not on notice of the factual basis of these defenses. "[A] defendant…must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff "fair notice" of the defense that is being advanced."

---

[3] Defendant notes that Plaintiffs should have moved to strike the affirmative defenses rather than to dismiss them. Because the standards are the same under either rule, the specific vehicle for eliminating the affirmative defenses is immaterial. Rule 12(f) governs motions to strike from a pleading any "insufficient defense" or any material that is "redundant, immaterial, impertinent or scandalous." When a Rule 12(f) motion to strike challenges the sufficiency of an affirmative defense (as opposed to whether the pleading contains inappropriate material), the standards for a Rule 12(f) motion to strike and a Rule 12(b)(6) motion to dismiss are "mirror image[s.]" *Canadian St. Regis Band of Mohawk Indians v. New York*, 278 F. Supp. 2d 313, 332 (N.D.N.Y. 2003) (internal quotation marks and citations omitted).

*Woodfield*, 193 F.3d at 362. Defendant argues the Court should examine the affirmative defenses in light of the admissions and denials contained in Defendant's First Amended Answer. (Response, p. 13). However, the admissions and denials contained in Defendant's Answer are not sufficient to put Plaintiffs on notice of the basis of CSA's affirmative defenses and therefore should be struck. *See Gonzalez v. Spears Holdings, Inc.*, 2009 WL 2391233 at *1 (S.D. Fla. July 31, 2009) ("[A] defendant must give the plaintiff 'fair notice' of the nature of the defense **and the grounds upon which it rests.**") (emphasis added).

Defendant's Response cites several cases stating that motions to strike affirmative defenses should be viewed with disfavor, yet in almost every case CSA cites, the affirmative defenses were struck because they were insufficient.[4] As the courts did in the cases cited by CSA, this Court should strike Defendant's affirmative defenses for failure to plead any set of facts upon which relief could be granted. This Court should strike Defendant's affirmative defenses because they are insufficient and are wholly lacking in factual allegations to support the claims.

### IV. Conclusion

Counterclaims are not permitted in FLSA claims, and as a result, Defendant's counterclaims should be struck from CSA's pleadings. In the alternative, Defendant's counterclaims should be dismissed because they fail to state a claim for which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant has not pled its affirmative defenses with sufficient particularity to put Plaintiffs on notice of the basis of the affirmative defenses, and as such, the Court should strike Defendant's affirmative defenses.

---

[4] *See e.g. Weil v. Theron*, 585 F. Supp. 2d 473 (S.D.N.Y. 2008); *FDIC v. Niblo*, 821 F. Supp. 441 (N.D. Tex. 1993); *Gonzalez v. Spears Holdings, Inc.*, 2009 WL 2391233 (S.D. Fla. July 31, 2009).

Respectfully submitted,

/s/ J. Derek Braziel
**J. DEREK BRAZIEL**
Texas Bar No. 00793380
**MEREDITH MATHEWS**
Texas Bar No. 24055180
**LEE & BRAZIEL, L.L.P.**
1801 N. Lamar Street, Suite 325
Dallas, Texas 75202
(214) 749-1400  Telephone
(214) 749-1010  Facsimile

**BRYAN D. POPE**
State Bar No. 00788213
**THE COCHRAN FIRM, PLLC**
3811 Turtle Creek Blvd., Suite 1400
Dallas, Texas  75219
(214) 651-4260 Telephone
(214) 651-4261 Facsimile
bpope@cochranfirm.com
**LEAD ATTORNEY**

**ROBERT J. CAMP**
State Bar No. ASB-1864-076C
**THE COCHRAN FIRM, PC**
505 20th Street North, Suite 825
Birmingham, AL  35203
(205) 244-1115 Telephone
(205) 244-1171 Facsimile
rcamp@cochranfirm.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of November, 2009 a copy of the foregoing document was electronically filed.  Notice of this filing will be sent to counsel of record for all parties by operation of the Court's Electronic Filing System.

_/s/ J. Derek Braziel_
**J. DEREK BRAZIEL**